## 29838.  ELLIOTT *v.* NATIONAL UNION RADIO CORPORATION.

DECIDED JANUARY 27, 1943.  REHEARING DENIED MARCH 6, 1943.

*Thomas A. Jacobs Jr.,* for plaintiff in error.

*Martin, Martin & Snow,* contra.

SUTTON, J.   National Union Radio Corporation, hereinafter referred to as the Radio Corporation, brought suit against G. Y. Elliott to recover $1496.01 on open account.   Elliott answered, admitting owing $578.60, but denied owing more.   Upon the trial of the case the court directed a verdict for the plaintiff for the amount sued for, with interest, and the exception here is to the judgment overruling the defendant's motion for new trial, one special ground of which is that the court erred in directing a verdict inasmuch as under the evidence there were issues of fact which should have been submitted to the jury.

The evidence made the following case:  Guy White and J. T. Smith, composing a partnership under the name of Smith Battery & Electric Company, hereinafter referred to as Smith Battery Company, dealing in radio equipment, handled radio tubes on consignment from the plaintiff.   This partnership was dissolved and White entered into a new partnership with G. Y. Elliott under the name of Radio Supply Company.   According to White, he turned over to the new partnership 2214 radio tubes, the property of the plaintiff, having accepted in writing on behalf of the Radio Supply Company, as he contended, a written offer of the plaintiff to place radio tubes on consignment with that partnership.   Elliott contended that the partnership between him and White was not formed until December 10, 1938, and that at the time White accepted the written offer of the plaintiff as of December 6, 1938, he was not his partner and was without authority to bind the partnership subsequently entered into.   The offer and acceptance provided, in substance, that the Radio Corporation would consign a stock of radio tubes to Radio Supply Company; that the Radio Supply Company would, before the 5th day of each month, make a

report to the Radio Corporation, showing the number of tubes sold and the number on hand on consignment, upon receipt of which report it would bill the Radio Supply Company "for the tubes sold, lost or destroyed," and the Radio Supply Company would make settlement by the 10th of each month. It appears that Elliott was aware of and acquiesced in the plan of the new partnership handling on consignment radio tubes from the Radio Corporation, though he testified that he never heard of the written agreement above mentioned until it was shown to him by a lawyer; consequently his partnership, as to any radio tubes actually accepted on consignment, would be liable as bailee for any unaccounted for. For this reason the written agreement purportedly entered into by White on behalf of the Radio Supply Company need have no special consideration on the merits of the controversy here involved.

Elliott denied that Radio Supply Company received from White, as the property of the plaintiff, 2214 radio tubes, but admitted receiving 500 which had been consigned to Smith Battery Company, 300 being actually received and 200 being in the hands of some sub-dealers which he took over from Smith Battery Company. He also testified that White put in the partnership assets 300 tubes of another kind as his own personal property. White caused to be issued to the plaintiff on or about December 1, 1938, an inventory showing on hand with Smith Battery Company on consignment 2214 radio tubes belonging to Radio Corporation. On or about January 1, 1939, the Radio Supply Company, through White, sent to the Radio Corporation an inventory showing 2214 radio tubes on hand on consignment. He testified that these tubes were the same 2214 tubes which had been with Smith Battery Company on consignment. After some months the partnership of Radio Supply Company was dissolved, Elliott buying out White's interest therein and thereafter conducting the business as his own. On October 2, 1939, Elliott wrote the Radio Corporation that he had purchased White's interest and that White would no longer be connected with the business and that he, Elliott, had assumed all obligations of the partnership of Radio Supply Company. Thereafter the plaintiff had some dealings with Elliott as Radio Supply Company. On January 2, 1940, Elliott returned 914 radio tubes to the plaintiff, whereupon he was billed with $1496.01 as the

purchase-price of radio tubes which the plaintiff claimed he was liable for as having been disposed of. Elliott refused to pay the bill, contending that he owed only $578.60, basing his calculations on the assumption that the partnership of Radio Supply Company originally received a total of 500 radio tubes, and not 2214, from Smith Battery Company. It is conceded that, if in truth 2214 radio tubes had been transferred to Radio Supply Company from Smith Battery Company, the bill would be correct.

It appears from the brief of counsel for the plaintiff in error that the court directed a verdict for the plaintiff on the theory that, even if Radio Supply Company had not received 2214 radio tubes from Smith Battery Company, but only 500, Elliott's act in taking White into partnership had made it possible for him to deceive the plaintiff into the belief that 2214 radio tubes, for which Smith Battery Company had been responsible, had been taken over by Radio Supply Company on consignment and responsibility therefor assumed by the latter, in consequence of which the plaintiff had released White and the Smith Battery Company from all liability, looking only to the new partnership for an accounting, and that under the equitable doctrine that as between two parties, where damage was sustained by the act of a third party, the one putting it in the power of the third party to inflict the loss should sustain the same. This doctrine, however, is not applicable here, for the reason that, unless specially agreed, the partnership of Radio Supply Company did not in law become responsible for the debt, if any, of Smith Battery Company, and White could not, as agent for Radio Supply Company, bind that partnership to assume or pay such obligation, such an attempt being beyond the scope of his authority as an agent of the partnership. Partners are bound by the acts of any one partner *only within the legitimate scope of the business of the partnership.* Code, § 75-302. See *Bryan* v. *Tooke,* 60 *Ga.* 437; *McRae* v. *Campbell,* 101 *Ga.* 662 (28 S. E. 920); *Standard Wagon Co.* v. *Few,* 119 *Ga.* 293 (46 S. E. 109). There is nothing in the evidence which shows that Elliott had any notice that more than 500 radio tubes came into the partnership of Radio Supply Company, or that he knowingly ratified any act of White in assuming responsibility, on behalf of the partnership, for any greater number, and by his act in taking in White as a partner he did not, in the eyes of the law, empower him to do any act out-

side of the legitimate scope of the business of Radio Supply Company. The direction of the verdict was unauthorized on the theory above discussed.

But as Elliott would be liable for any radio tubes accepted on consignment, and the defendant in error contends that the evidence demands a finding that the Radio Supply Company, to the full interest in which Elliott succeeded, received 2214 radio tubes from Smith Battery Company on consignment, particularly as evidenced by the inventory sheet sent in at the close of business for December, 1938, examination of additional evidence is pertinent. The inventory sheet was not conclusive, but only prima facie evidence, of the fact that 2214 radio tubes were received by Radio Supply Company. In *Dolvin* v. *Hicks,* 4 *Ga. App.* 653 (2) (65 S. E. 95), it was held: "Testimony that an account made out against a partnership was presented to one of the members thereof, and that he acknowledged its correctness, is prima facie proof of the correctness of the account; and, in case of a denial of the account by the partnership, is sufficient to make an issue of fact for the jury."

Treating the inventory sheet as containing an admission with reference to a matter connected with the partnership business, although it would be binding upon the partnership as prima facie proof of the receipt of 2214 radio tubes (Code, § 75-302; *Ward-Truitt Co.* v. *Nicholson,* 23 *Ga. App.* 672 (2), 99 S. E. 153), such an admission by one of the partners is not final proof but only a means of proof having evidentiary value to be considered by the jury, and is subject to explanation or denial by other evidence. See *William Hester Marble Co.* v. *Walton,* 22 *Ga. App.* 433 (4) (96 S. E. 269) ; *Scott* v. *Kelly-Springfield Tire Co.,* 33 *Ga. App.* 297 (1) (125 S. E. 773). Though the admission was prima facie evidential of the fact of receipt of 2214 radio tubes by Radio Supply Company, the partnership, through Elliott, or he for himself, after assuming the obligations of the partnership, was entitled to deny the fact of receipt of such number of radio tubes or explain the circumstances under which it was made by his partner without his knowledge, as he contended, so as to aid the jury in determining the evidential value of the admission in the inventory sheet. White, of course, testified that it was a correct report, but Elliott testified that only 500 radio tubes were taken over from Smith

Battery Company, contending that the excess of 1714 radio tubes was fictitious, and that the alleged false total of 2214 was shown in the inventory sheet by White to escape a liability incurred under his former partnership operation as Smith Battery Company and to saddle upon Elliott a debt really due by the old partnership.

Miss Viola Vining, who worked with Radio Supply Company at the time the inventory sheet as of December 31, 1938, was sent to the plaintiff, testified that she prepared the sheet with White and signed his name at his direction; that the 2214 radio tubes reported on hand were the tubes which were taken over from Smith Battery Company, but on cross-examination stated that she did not know how many tubes were out on consignment to sub-dealers and how many were in stock with Radio Supply Company, and that she reckoned she "took Mr. White's figures. I don't know;" that if 2214 radio tubes were not in stock they were out on consignment to sub-dealers, but "I don't know how many were on consignment. I can't tell you how many tubes were in stock at the time I made that report showing 2210 [2214] tubes on hand. I could not say whether there were 500 or 600 in stock."

Aiken Stanton testified that he had business dealings with Smith Battery Company in the latter part of 1938 and was familiar with the stock of radio tubes the company had at the time it dissolved. He had on hand 100 tubes that "belonged" to that company, and from what he saw of the stock at Smith Battery Company he would say there were 500 to 750 tubes at the time the company dissolved, and he saw all of the stock of Radio Supply Company and would judge there were about 500 to 750 tubes on the shelves, about the same number Smith Battery Company had at the time it was dissolved.

C. J. Motes testified that he was formerly employed by Radio Supply Company and kept the books. He saw the stock of tubes kept by the company, and from the space occupied by the tubes he would say that certainly not more than 600 tubes were on the shelves at any one time. It was his belief that there never were more than 600 to 700 tubes in stock there on the shelves. He could not say that Radio Supply Company had 18 sub-dealers but "that sounds about right." He did not know how many tubes these sub-dealers had at any time, but knew that Radio Supply Company did withdraw consignments from some and sent them

back to the factory. How many sub-dealers Radio Supply Company had is conjectural, but while he was employed with the company there were not more than three or four consignments out. There could have been as many as ten or twelve consignments back in December (1938) and January (1939).

Johnny McDonald testified that he worked for Elliott at the time he and White formed the partnership of Radio Supply Company. He was familiar with the business of Smith Battery Company when it operated and would say that it had about 700 radio tubes on December 10, 1938. He helped put some of the tubes on the shelves when they were moved to Radio Supply Company. It looked to him as if about 600 to 700 tubes were taken from Smith Battery Company to Radio Supply Company, about half of which were metal tubes, there being about 300 glass tubes. He did not know how many subdealers Smith Battery Company had. He knew Radio Supply Company had some tubes with one fellow on consignment, but did not know how many tubes sub-dealers had on consignment. He stayed with Radio Supply Company until it was dissolved and knew of no tubes that came from Smith Battery Company except the 600 to 700 above mentioned.

Guy White testified that the inventory gotten up in December, 1938, showing 2210 radio tubes (2214) was the first inventory taken at the Radio Supply Company. He did not take it. Miss Vining took it. The radio tubes were originally consigned to Smith Battery Company and later transferred to Radio Supply Company. The two inventory sheets hereinbefore referred to were introduced in evidence, and they showed 2214 radio tubes on hand with Smith Battery Company at the end of November, and the same number on hand with Radio Supply Company at the end of December, 1938.

Summarizing the evidence: Radio Supply Company, for all the obligations of which Elliott assumed responsibility under date of October 2, 1939, took over on consignment, as the property of the plaintiff, a number of radio tubes. White testified that the number was 2214. Elliott denied this, contending that only 500 tubes were received, 200 of which he said White reported as being with sub-dealers. The plaintiff relied on an alleged admission of the receipt of 2214 tubes as shown by an inventory sheet sent to the plaintiff at the instance of White. It was not prepared by him

but by a Miss Vining. She testified that 2214 tubes were taken over from Smith Battery Company, but in her detailed examination she stated that she and White prepared the inventory and she reckoned she "took Mr. White's figures; I don't know." She did not know how many tubes were in stock with Radio Supply Company or how many were with sub-dealers. The evidence indicates an indefinite number of sub-dealers retained by Radio Supply Company after White and Elliott formed that partnership, but does not establish the number of tubes on consignment with them under Radio Supply Company. In these circumstances the jury would have been authorized to find that the alleged admission was very much depreciated by the testimony of Miss Vining, and that the evidence otherwise did not show that Radio Supply Company or Elliott had at any time on consignment, in stock and with sub-dealers, as the property of the plaintiff, as many as 2214 radio tubes. The evidence presented an issue for determination by the jury as to the amount in which Elliott was indebted to the plaintiff. It did not demand a finding that he owed the amount sued for. The direction of a verdict in favor of the plaintiff for the full amount was error, and the court erred in overruling the defendant's motion for new trial.

*Judgment reversed. Stephens, P. J., concurs. Felton, J., concurs in the judgment.*